BOEHM, Justice,
dissenting.
I respectfully dissent. I recognize that termination of parental rights presents an intrusion by the courts into constitutionally protected interests of the parent. And protection of constitutional rights may require enhanced appellate serutiny. See Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 498-504, 104 S.Ct. 1949, 80 LEd.2d 502 (1984). The role of the appellate courts, however, is somewhat different in some termination cases than it is in determining whether the *1137 record supports a finding of actual malice in a defamation case. The ultimate issues in this case are the likelihood that the conditions leading to the child's removal will not be remedied, and whether continuation of the parental relationship poses a threat to the child. In my view, neither of these is susceptible to the rigorous analysis we seek to apply in determining whether more precise statutory elements are met, or whether the evidence is sufficient to establish a historical fact such as whether the traffic light was red or green.
The statute calls for both of these determinations critical to a termination proceeding in language that appears in the same form as language setting out the elements of a crime or tort. But the determinations the trial court is called upon to make in a termination proceeding turn on questions such as the degree of confidence we have that the parent will in fact maintain a decent home for the child and the reliability of assurances that a straighter path has been found. These determinations call on the trial court to make not only an evaluation of credibility of witnesses, but also an evaluation of the reliability of their assurances as to various assertions and promises. Resolution of these questions often is more in the nature of predictions of future events, not findings as to what has already occurred. As such, an accurate and detailed rationale for a termination is more difficult to write with precision and frequently, as in this case, ultimately turns significantly on what the gut of the finder of fact is telling him or her. Such a finding is not as readily reviewed by an appellate court because it cannot easily be picked apart into its components, and is therefore less susceptible to the analysis an appellate court usually undertakes. Factual determinations are reviewed under the deferential "clearly erroneous" standard. The standard of review in termination cases, however, is all over the map. See James W. Paulsen, Family Law: Parent and Child, 51 S.M.U. L.Rev. 1087, 1124-26 & ns. 282-86 (1998) (noting the wide range of the standard of review by appellate courts in various jurisdictions, from de novo to abuse of discretion). Because of the unusual nature of termination determinations, I would give even wider deference to the trial judge's conclusion as to what is in the best interests of the child, and whether the conditions are likely to improve.
Of course, some challenges to terminations are based on failure to comply with procedural requirements. These are readily reviewed as any other procedural error. But when, as here, the issue is the sufficiency of the trial court's findings as to the ultimate substantive requirements for a termination my lack of confidence in appellate review leads me to defer to the trial court in all but the obvious miscarriage.
On this record, I believe the trial court could have concluded that although the father never directly contributed to the reasons for placing the child in foster, he lacked the ability to provide proper parenting and care for the child both immediately and in the future. As we recently reiterated, in ruling on a termination petition, the parents' interests must be subordinated to the child's. In re GY., 904 N.E.2d 1257, 1259 (Ind.2009).
In sum, I would not disrupt this child's current placement based on failure of the trial court to articulate its reasoning in sufficient detail. In recent years, for good reason, we and most states have taken legislative and administrative steps to avoid prolonged and repeated disruptions in a child's placement. This also favors leaving in place an order that may be on the edge of acceptability but where future review is unlikely to result in a different *1138 outcome. I would accept as sufficient the trial court's ultimate findings that continuation of the parental relationship presents a threat to the child's well-being and there is a reasonable probability that the conditions leading to placement outside the home will not be remedied.